CYNTHIA A. DAVIDSON, Appellant, v FRANK D. CONOLE, Defendant, and BINGHAMTON GENERAL HOSPITAL, Respondent.

Third Department, February 5, 1981

APPEARANCES OF COUNSEL

*Joseph Mandell (Arthur N. Seiff* of counsel), for appellant.

*Kramer, Wales & McAvoy (Philip J. Kramer* of counsel), for respondent.

**OPINION OF THE COURT**

CASEY, J.

The complaint was dismissed against the defendant hospital for the plaintiff's failure to prove a cause of action in medical malpractice. At the same time, the trial court granted judgment against the defendant doctor, with his

consent and the consent of his attorney, in the amount of $139,424. On this appeal, plaintiff claims that the proof adduced, prima facie, was sufficient to require a factual determination of malpractice against the defendant hospital by the jury and that the trial court's dismissal of her complaint was, therefore, error.

The facts underlying the action arose in January, 1962 when the plaintiff, then seven years old, was examined by the defendant doctor, a privately practicing general surgeon in the Binghamton area, for a marble-size lump in her right breast. The doctor tentatively diagnosed the condition as "gynecomastia"—an excessive development in the breast of males—rather than "virginal hypertrophy"—which would more accurately describe premature breast enlargement or tumor in a female. Regardless of designation, however, the plaintiff was admitted to the defendant hospital in February, 1962 where the defendant surgeon performed an "incisional biopsy", removing the lump and submitting the tissue to the hospital's laboratory for examination. At the laboratory, the tissue was examined by the hospital's pathologist, Dr. Elton. At the time, the hospital had a "tissue committee", created to consider removed tissue, with the obvious objective of preventing the performance of unnecessary surgery. The defendant hospital, the committee and the pathologist had devised the following code to indicate the types of tissue examined:

PAS-1    indicated diseased tissue requiring surgery;

PAS-2    indicated diseased tissue, surgical removal not clearly required;

PAS-3    indicated tissue not diseased.

When tissue was coded PAS-2 or PAS-3, the matter was referred to the tissue committee for review and evaluation. When, however, the tissue was classified PAS-1, indicating diseased tissue requiring surgery, no referral to the tissue committee was required. The hospital's pathologist stated that his examination of the tissue indicated "hypertrophy" and it was, therefore, abnormal for a girl of the plaintiff's age, but was not malignant. Despite this conclusion, however, he coded his finding PAS-1 (diseased tissue requiring

surgery), and entered this classification in the plaintiff's hospital chart. Following the biopsy, the defendant doctor changed his diagnosis to "fibroadenoma". The pathologist agreed that it was "adenoma", but not that was "fibroid".

About a year later, another lump was discovered in the plaintiff's other breast, and again she consulted the defendant doctor, who again diagnosed her condition as "gynecomasita". Fearing neoplasm—a new growth of tissue that could be related to the previously discovered lump in the right breast, and potentially malignant—more extensive surgery was performed by the defendant doctor, and significantly more tissue was removed from the left breast than in the previous operation. After a pathological consultation, the defendant doctor changed his diagnosis to "hypertrophy". Again the hospital's pathologist coded the tissue submitted to him as PAS-1, a designation he believed proper, simply because the tissue was abnormal. Expert testimony offered by the plaintiff, however, indicated that the tissue removed in both operations, while not normal for a seven or eight-year-old female, was not diseased and should not have been coded PAS-1, but rather, PAS-3.

The plaintiff claims reversal is required on two theories. The first is that the hospital should have prevented both operations, since its agents and employees were aware of the plaintiff's sex and the diagnosis and should have demanded a consultation before permitting surgery to take place. There is no merit to this contention. The defendant surgeon was not employed by the hospital, but rather was an independent private physician, and the defendant hospital is not liable for its failure to intervene in the relationship of physician-patient that admittedly existed between the defendant doctor and the plaintiff unless the hospital had reason to know that the act of malpractice would take place (*Fiorentino v Wenger*, 19 NY2d 407, 415). Furthermore, the surgery performed on the plaintiff's right breast was concluded before the tissue was submitted to the hospital laboratory for examination, and, therefore, no decision or determination by any member of the hospital staff caused or contributed to the injury sustained by the plaintiff from the first operation.

Secondly, the plaintiff contends that if the proper designation of PAS-3 had been made by the pathologist of the tissue submitted to him at the time of the first operation, that coding would have gone to the "tissue committee" of the hospital, and the second operation would have been prevented by that committee, as unnecessary surgery. This contention is highly speculative and overlooks the requirement that the plaintiff must prove that the negligence of the defendant is a proximate cause of her injury *(Ventricelli v Kinney System Rent A Car*, 45 NY2d 950). This argument ignores the year that elapsed between the coding and the second operation. Moreover, there is no proof that the tissue committee had ever previously prevented or even interfered with the professional opinion of an independent surgeon that an operation is necessary; or that the decision of the defendant surgeon herein would have been changed or the excisional biopsy of the second operation stopped, if the committee had had an opportunity to review the matter; or that the committee's opinion that an operation was unnecessary, even if made, would have prevailed if the defendant doctor had a contrary opinion (see *Myers v County of Nassau*, 36 AD2d 633).

Nevertheless, despite the lack of merit in both of these contentions of the plaintiff, it does not follow that her appeal must fail. The record reveals that at the time of the second operation, the defendant doctor relied, at least in part, on the PAS-1 designation contained in the plaintiff's hospital record, which was made by the hospital's pathologist when the tissue taken from the first operation was examined by him. To the extent that that coding was erroneous, and to the extent that it proximately contributed to the performance of the second surgery by the defendant doctor, the defendant hospital is liable for the injury resulting to the plaintiff from the second surgery *(Fiorentino v Wenger, supra*, p 414).

Accordingly, the judgment of the trial court dismissing the plaintiff's cause of action for malpractice against the defendant hospital at the close of the plaintiff's case was error and should be reversed and the plaintiff's case against the defendant hospital remitted for a new trial.

◾ In addition to its claim that the plaintiff has proved no cause of action in malpractice against the defendant hospital, the hospital additionally argues that the judgment granted by the trial court to the plaintiff against the defendant doctor bars the plaintiff's action against the hospital. While it is true that the satisfaction of a judgment rendered against one tort-feasor discharges all tort-feasors from liability to the plaintiff *(Velazquez v Water Taxi,* 49 NY2d 762, 764), the judgment entered by the trial court against the defendant doctor cannot be considered such a judgment. The amount of the judgment was agreed to by the defendant doctor and contained not only the proceeds of his medical malpractice insurance, but a portion of his own private resources. The judgment was entered without costs upon the consent of the defendant doctor and his attorney in an amount agreed to by the plaintiff and the doctor. There can be no doubt that the judgment so entered was a settlement on the record and that it was entered as a judgment only for the purpose of enforcement (see *Matter of Bogdanoff v Halper,* 268 App Div 556).

The judgment entered May 24, 1979, should be reversed, on the law, and a new trial ordered in accordance herewith, with costs to abide the event; the judgment entered June 5, 1979, should be modified, on the law, by reversing so much thereof as dismissed plaintiff's complaint against defendant Binghamton General Hospital, and, as so modified, affirmed, without costs.

MAHONEY, P. J., SWEENEY, MAIN and MIKOLL, JJ., concur.

Judgment entered May 24, 1979, reversed, on the law, and a new trial ordered in accordance herewith, with costs to abide the event; judgment entered June 5, 1979, modified, on the law, by reversing so much thereof as dismissed plaintiff's complaint against defendant Binghamton General Hospital, and, as so modified, affirmed, without costs.